Fairfax **LEARY, Trustee of the Property of United New Jersey Railroad and Canal Company and Trustees of the Property of Penn Central Transportation Company**

v.

**UNITED STATES RAILWAY ASSOCIATION and Black River and Western Corp.**

**Civil 77-2.**

Special Court
Regional Rail Reorganization Act.

Dec. 1, 1978.

Paul R. Duke and John Michael Hemmer, Washington, D. C., for plaintiffs, Trustees of Penn Central Transp. Co.

William H. Ewing and Mitchell L. Bach, Philadelphia, Pa., on brief for plaintiff, Trustee of United New Jersey Railroad & Canal Co.

G. Joseph King and Louise L. M. Tucker, Washington, D. C. (Cary W. Dickieson and Stephen C. Rogers, Washington, D. C., of counsel), for defendant, U. S. R. A.

Allen D. Porter and Miller & Porter, Princeton, N. J., for defendant, Black River & Western Corp.

Before FRIENDLY, Presiding Judge, and WISDOM and THOMSEN, Judges.

THOMSEN, Judge:

Plaintiffs, the Trustee of the Property of United New Jersey Railroad and Canal Company (UNJ) and the Penn Central Trustees (hereinafter, collectively, Trustees)[1] filed this action against USRA and Black River & Western Corporation (Black River) to obtain correction of a conveyance document (UNJ–BRW–RP–1) which trans-

---

1. UNJ is a secondary debtor in reorganization under § 77 of the Bankruptcy Act in the consolidated proceedings in the Eastern District of Pennsylvania in which PC is the principal debtor.

ferred to Black River (a profitable railroad) not only slightly over two miles of rail line owned by UNJ and leased to PC, running northerly along the Delaware River from a point south of Bridge Street in Lambertville, N.J., but also a five-acre tract of land adjacent to the west side of the southern portion of the two-mile rail line.[2] On the five-acre tract is a 2½ story building, 40 ft. by 70 ft., portions of which have been used at various times for various purposes, including a station, storage of railroad equipment and offices rented to the public. The five-acre tract is sometimes referred to by the parties as the "station property" and will be so referred to herein. The Trustees contend that the inclusion of the station property in the conveyance document was the result of an error on the part of USRA personnel, and that correction of the conveyance order is necessary to effectuate the purposes of the Rail Act and the Final System Plan (FSP).

The conveyance document in question was executed pursuant to this court's conveyance order, dated March 25, 1976, effective April 1, 1976. That order was entered under § 303(b) of the Rail Act, and provides that to the extent necessary to carry out the intent of a conveyance document, if the parties thereto are unable to agree upon appropriate action, any such party or parties may apply to this court for such relief as may be appropriate.

The Trustees base jurisdiction: on § 209(e)(2) of the Rail Act, which gives this court original and exclusive jurisdiction to interpret, alter, amend, modify or implement any of the orders of conveyance entered by this court pursuant to § 303(b) in order to effect the purposes of the act or the goals of the FSP; and on § 5 of the conveyance order, which permits correction of the conveyance documents. On the other hand, Black River argues that jurisdiction must be based on § 209(e)(1)(E), and that

the burden of the Trustees is to establish that USRA acted in reckless or deliberate disregard of applicable law, which is the test provided for relief under § 209(e)(1)(E).

Pursuant to a pretrial order, the case has been submitted to the court on the pleadings, certain stipulated facts, depositions, answers to interrogatories and various authenticated documents, including the FSP and corrections and supplements thereto. Briefs have been filed and counsel for all parties have been heard. Based upon the following findings of fact and conclusions of law, we hold that plaintiff Trustees are entitled to prevail.

\*　　\*　　\*　　\*　　\*　　\*

Before the conveyance date PC leased from UNJ and operated a line running from the outskirts of Trenton through Lambertville toward Phillipsburg along the New Jersey side of the Delaware River. Black River operated a line from Flemington, New Jersey, southwesterly through Ringoes to a junction with the UNJ line a short distance north of the property in question.

In late summer or early fall of 1975, USRA had requested the transferors to identify properties to be excluded from conveyances. The station property at Lambertville was one of the properties identified by PC for exclusion. USRA agreed, following an on-site inspection by one of its field inspectors, and placed the station property in an exclusion file because it was of little or no use for freight purposes.

The FSP left in some doubt what disposition should be made of the UNJ line; USRA thought at first that Conrail might receive all or part of the UNJ line, including the two miles in question, if an alternative route for overhead freight traffic could not be found.[3] However, when it was finally decided, a few weeks before the conveyance date, that no part of the line would be conveyed to Conrail, USRA decided to offer

---

2. In the alternative, the Trustees seek a mandatory injunction directing Black River & Western to reconvey the five-acre tract to UNJ.

3. See Vol. II, FSP, p. 206, USRA Line No. 121, and pp. 207–9, Line No. 121A.

to Black River as much of the UNJ line as Black River wished to buy at $17,000 a mile. Black River decided to take a little over two miles of the line (partly north and partly south of the junction) for $36,074. After considering all the evidence before us, we find: that both USRA and Black River knew that the station property itself was worth far more than $36,000; that USRA did not intend to include the Lambertville station property in the offer; and, despite Black River's denial, that Black River knew that the station property was not intended to be included in the offer which was accepted by Black River.

The conveyance document which plaintiff Trustees were required to execute, along with hundreds of other such documents, described the property conveyed to Black River as including all the real property "lying in, under, above, along, contiguous to, adjacent to or connecting to such line" between approximately milepost 16 and milepost 18 on the Belvidere-Delaware Branch. The station property was such "adjacent" property. Inclusion of the station property in the conveyance document resulted from a mistake by the USRA staff, caused by the last minute rush to complete the conveyance documents by the deadline set in the conveyance order.

Black River contends that it took the two miles of line primarily because it wanted to expand its passenger service to Lambertville. The passenger service in question then consisted of a few excursion trains, which before 1976 ran between Flemington and Ringoes, a distance of some five or six miles. That service has now been extended to include four round trips over the five or six miles between Ringoes and Lambertville on Sundays and holidays from May through October. Black River is also developing some freight service on the two miles in question; we do not accept its contention that it wanted the two miles, including the station property at Lambertville, primarily for its passenger business, and that USRA knew that to be a fact.

Even if USRA had known of Black River's excursion trains at the time it made its decision to convey the two miles of line to Black River, that knowledge would not have affected the decision. Such excursion trains are not the kind of passenger service which the Act intended USRA to consider in its decision-making. Such use did not come within the goals set by § 206 of the Rail Act, particularly the portion thereof dealing with passenger service, § 206(a)(7), viz:

> the movement of passengers and freight in rail transportation in the region in the most efficient manner consistent with safe operation, including the requirements of commuter and intercity rail passenger service; the extent to which there should be coordination with the National Railroad Passenger Corporation and similar entities; and the identification of all short-to-medium distance corridors in densely populated areas in which the major upgrading of rail lines for high-speed passenger operation would return substantial public benefits;

We are satisfied that the inclusion of the Lambertville station property in the deed was due to a mistake, which we have jurisdiction to correct under § 209(e)(2) of the Rail Act and § 5 of our conveyance order of March 25, 1976.

\* \* \* \* \* \*

Black River is not entitled to retain the Lambertville station or any other portion of the five-acre (more or less) tract known as the station property except—

(1) so much thereof as may lie within the same number of feet west of the westernmost rail as was conveyed to Black River along the rest of the two mile line which was conveyed to Black River by the deed in question;

(2) such use of the remainder of the station platform as will not interfere with reasonable ingress to or egress from the station building or the reasonable maintenance thereof.

However, under the particular facts of this case, if Black River would prefer to rescind the transaction, transfer the property conveyed back to the Trustees and recover the $36,074 which it paid, it may do so by tendering an appropriate deed to the Trustees within 30 days from the date of the filing of this opinion.

Counsel should agree upon a form of judgment order giving effect to these rulings.